**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

MICHAEL D. SOSH,

Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of Social Security,

Defendant.

CAUSE NO.: 1:18-CV-249-HAB

**OPINION AND ORDER**

Plaintiff Michael D. Sosh seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff alleges that he has been disabled since September 1, 2014, due to a variety of physical and mental impairments, including chronic obstructive pulmonary disease (COPD), degenerative disc disease, and cervical disc disorder.

**ANALYSIS**

**A. The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent her from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)[1]; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had engaged in substantial gainful activity (SGA) through the end of September 2014, but not thereafter. At step two, the ALJ found that Plaintiff had the severe impairments of insomnia, COPD, carpal tunnel syndrome, osteoarthritis of the shoulder, lumbar spondylosis and degenerative disc disease, cervical disc disease, obesity, and generalized anxiety disorder. The ALJ stated

[1] As discussed in *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Pt. 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Pt. 416 of the regulations) are, for the most part, substantially identical. For convenience, the Court will generally cite herein to only the Title II statutes and regulations.

that these impairments had more than a minimal impact on Plaintiff's ability to work. Specifically, they limited Plaintiff's physical capacities for sitting and standing for prolonged periods without alternative positions, using his upper extremities, lifting and carrying heavy items, tolerating certain environmental factors and working around hazards. His capacity to perform mental demands of work were limited with respect to the completion of complex tasks or detailed work decisions, working at a fast or regimented pace, and interacting with others.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 51.) The ALJ considered listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), and 3.02 (Chronic obstructive pulmonary disease), as well as Social Security Ruling 02-1p (Obesity). The ALJ noted:

> The discussion of the evidence that follows at finding number five shows there is no objective, clinical, or medical opinion evidence to support a finding that the claimant's impairments meet any of the listings in the Regulations. Furthermore, the State agency medical consultants determined the claimant did not have any condition that met a listing.

(R. 51.) The ALJ also noted that a finding of medical equivalency required an opinion from an acceptable medical source designated by the Commissioner. The State agency physicians in this case "determined that there is no medical equivalency." (*Id.*)

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). The RFC included numerous postural and environmental

limitations and noted that Plaintiff required a sit/stand option that would allow him to change positions after thirty minutes.

Based on the above RFC and her hypothetical questions to the vocational expert (VE), the ALJ found that Plaintiff was not able to perform his past relevant work, but that there were other jobs that existed in significant numbers in the national economy. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece

of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**C. Step Three Determination**

The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). To meet (as opposed to medically equal) Listing 3.02(d), Chronic Respiratory Disorders, on the basis of exacerbations or complications requiring hospitalizations, the record must demonstrate three such hospitalizations within a twelve-month period and at least thirty days apart. The hospitalizations must last at least forty-eight hours. *See* Listing 3.02(d). Plaintiff's two hospitalizations were not sufficient to meet the listing.

A claimant may also demonstrate presumptive disability by showing that his impairment is accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Plaintiff has the burden of presenting medical evidence to show that an impairment or combination of impairments equals one of the

listed impairments. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."). Specifically, Plaintiff must present findings that his impairment or impairments is "medically equivalent" to a listing. 20 C.F.R. §§ 404.1526.

Here, the ALJ found that the evidence did not support a finding that the Plaintiff met any of the listings in the regulations, including Listing 3.02 (Chronic obstructive pulmonary disease). She also noted that a finding of medical equivalency for Listing 3.02 requires opinion evidence from an acceptable medical source designated by the Commissioner indicating that the impairment is equivalent to a listed impairment. (R. 51.) The ALJ stated that the State agency physicians determined that Plaintiff did not have a condition that met a listing and that there was no equivalency in this case. The ALJ further stated that there was no medical opinion to the contrary. (*Id.*)

On appeal, Plaintiff argues that the ALJ failed to adequately articulate how she concluded that Plaintiff's COPD exacerbations/severe asthma did not medically equal Listing 3.02(d). Although Plaintiff acknowledges that an ALJ may rely on a state agency physician's finding of no equivalency, he contends that the reliance was not proper in this case without additional explanation because there was contradictory evidence in the record, and nothing suggests that the state agency physicians considered that contradictory evidence.

The Court's review of the record does not reveal any evidence that the ALJ or the State agency consultants failed to consider. Both were aware of Plaintiff's COPD and the treatments he received as a result, as evidenced by the physicians' disability reports and the ALJ's written decision.

Further, the State agency physicians completed Disability Determination and Transmittal forms in July and in October 2015. "These forms conclusively establish that 'consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (first quoting *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989); then citing 61 Fed. Reg. 34466). Importantly, no other medical source contradicted these opinions. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) (finding no err in the no equivalency determination when the ALJ accepted opinions from two state agency physicians who concluded that claimant did not meet or medically equal any listed impairment "[b]ecause no other physician contradicted these two opinions"); *Steward v. Bowen*, 858 F.3d 1295, 1299 (7th Cir. 1988) (finding no contradiction of state agency consultants opinion on the question of medical equivalency where reports of plaintiff's "treating physicians simply did not go so far as to render an opinion on the issue in question—medical equivalency").

Plaintiff submits that his record contained contradictory evidence. Plaintiff asserts that each of his two hospitalizations were three times longer than what the Listing requires to meet its criteria, and that they occurred within four months, which is much

closer together than is required to meet the Listing. He argues that these exacerbations could have reasonably resulted in a finding of medical equivalence.

The Court finds that Plaintiff's argument does not identify a contradiction of the State agency consultants' opinions. Rather, it presents a disagreement with how the evidence was interpreted and weighed. These arguments do not present a proper basis upon which to remand. Further, the opinions of the State agency consultants provided substantial evidence to support the ALJ's conclusion that Plaintiff's breathing impairment did not medically equal the criteria of a listed impairment. Accordingly, the Court finds no basis to reverse the Step Three determination.

**D. Residual Functional Capacity**

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. According to Plaintiff, the ALJ acknowledged that Plaintiff received treatment for his COPD, which would result in being off task for at least some of the workday, but did not account for any time off task in assessing the RFC or when presenting hypothetical questions to the VE.

RFC measures what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all the evidence that is relevant to the disability determination and provide

enough analysis in his decision to permit meaningful judicial review. *See Barnhart*, 362 at 1002; *Clifford*, 227 F.3d at 870–71. The ALJ must also consider the combined effect of all of the claimant's impairments, including those that are not severe. *See* 20 C.F.R. § 404.1545(e). An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

To support his claim that time off task should have been included in the RFC, Plaintiff points to page 1619 of the administrative record, which he contends is a physician's recommendation to do a breathing treatment every six hours and during exacerbations. The Court could locate no such recommendation at that page of the record. Although Plaintiff's COPD is mentioned, the treatment consisted of taking two puffs from an inhaler once a day and following up with pulmonology. (R. 1619.) Plaintiff also relies on his testimony at the hearing before the ALJ when he testified about the effectiveness of his breathing treatments. However, that testimony does not identify any amount of time required to perform the treatments.

> Q. Are you having any treatment for your COPD?
>
> A. Oh, yes, Your Honor. I see a lung specialist, and I'm on two — I have two inhalers I take a day, and I have an emergency puffer if it gets real bad. And then I have a breathing machine at the house that I do too. And I also take a pill at nighttime for my lungs.

(R. 101.) Plaintiff asserts that his COPD required that therapies be completed multiple times per day and as needed during an exacerbation, and that he would still sometimes be hospitalized. Plaintiff believes that this warranted at least some time off task,

especially as he would presumably be exerting himself more in the workplace, and would need to have his nebulizer machine at his place of work.

Plaintiffs arguments do not convince the Court that the ALJ erred when she did not include time off task in the RFC. As mentioned above, there is no evidence in the record that Plaintiff would be required to have the nebulizer machine at work. The ALJ acknowledged Plaintiff's need for treatment on a regular basis, as well as the two periods of inpatient treatment. The evidence, however, also revealed that prior to and after exacerbations, Plaintiff's COPD was relatively under control and did not cause disabling symptoms or functional limitations. Pulmonary functions tests and x-rays did not show disabling abnormalities. To assess what functional limitations the COPD and its accompanying treatment would create, the ALJ properly looked to opinion evidence.

The medical consultant who examined Plaintiff's case in October 2015 on behalf of the State agency opined that Plaintiff should avoid moderate exposure to fumes, odors dusts, gases, chemicals, poor ventilation, as well as concentrated exposure to humidity and extreme cold and heat. The consultant also imposed exertional limitations.

A nurse practitioner, Jennifer Bow, completed a pulmonary medical source statement in June 2016. She included exertional limitations that differed somewhat from those found by the State agency consultant. Nurse Bow also opined that Plaintiff would be "off task" because symptoms were severe enough to interfere with attention and concentration for ten percent of a typical workday and that he would miss about three days of work per month. (R. 1473–74.) Nurse Bow characterized Plaintiff's acute asthma attacks as moderate, and able to be treated with medications. (R. 1471.) However, she

thought he would experience attacks four times per year, with an average incapacitation period of one week for each attack. (*Id.*)

The ALJ considered both opinions and gave great weight to the opinion of the State agency medical consultant. She assigned partial weight to Nurse Bow's opinion "as it indicates a more limited level of functioning than the record supports." (R. 57.) "Notably, it is inconsistent with her own February 2016 treatment record and the records of the pulmonary specialist Dr. Metha, for whom she works. It is also inconsistent with the primary care provider's treatment records, the chest x-rays, and the pulmonary function test." (*Id.*)

Plaintiff argues that the ALJ's dismissal of Nurse Bow's opinion that Plaintiff would be absent three days per month and off task ten percent of the time "is perfunctory and illogical." (Pl.'s Br. 20, ECF No. 15.) Plaintiff contends that the ALJ was required to confront the periods of exacerbation and not simply rely on normal findings at times when Plaintiff was not experiencing pulmonary exacerbations. The Court disagrees with Plaintiff's assessment and finds that the ALJ did confront the exacerbations. These exacerbations, along with the clinical findings that Plaintiff exhibited outside the periods of exacerbation, were the subject of an extensive narrative. Nurse Bow's February 2016 treatment notes were a part of this narrative.

In February 2016, Nurse Bow saw Plaintiff for a follow-up after he missed his July 2015 appointment. She noted that he was doing very well and denied any recurrent exacerbations or hospitalizations. (His last hospitalization was in May 2015.) Plaintiff had not used his rescue inhaler recently, and he was not wheezing or coughing. (R. 1485.) The

ALJ also highlighted other findings from the record that were inconsistent with a conclusion that Plaintiff would miss about three days of work per month and be off task for ten percent of the day. The ALJ did not, as Plaintiff argues, suggest that Plaintiff would never again experience an exacerbation. Rather, she considered and weighed the opinion evidence to determine what functional limitations were supported by a record that contained evidence of relatively well controlled COPD, despite some periods of exacerbation.

Plaintiff complains that the state agency physicians' assessments on which the ALJ placed great weight did not mention his pulmonary exacerbations and resulting hospitalizations and did not appear to know about them. He objects to the ALJ's reliance on their opinions over that of Nurse Bow's. Here again, the record does not support Plaintiff's claim. As explanation for the exertional limitations, the October 2015 report cited both periods of Plaintiff's inpatient care for COPD. (R. 162.) The report also included COPD as one of the reasons for the environmental limitations. The consultant also explained that Plaintiff's allegation of worsening COPD was not supported by the pulmonary function tests or the medical evidence of record. Rather, Plaintiff's test results showed "mild COPD." (R. 163.) The "more consistent a medical opinion is with the record as a whole, the more weight [is given] to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

The ALJ provided adequate insight into how she evaluated the opinion evidence, and why she gave more weight to the opinion of the State agency consultants than to the opinion of the nurse practitioner. The Court finds that the RFC is supported by

substantial evidence and the Court will not reweigh the evidence and substitute its own judgment for that of the Commissioner.

**CONCLUSION**

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on September 25, 2019.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT